IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAMON CHARLES WILLIAMS, Solomon Flowers Estate, *Petitioner*, v. COUNTY OF COOK, et al., *Respondents*. | No. 20 C 759 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Respondents' Motion to Dismiss Petitioner Damon Charles William's Complaint. [Dkt. 26] although it is better treated as a Motion to Deny Confirmation and Motion to Vacate an arbitration award. Williams, who is proceeding *pro se*, filed a Complaint on February 4, 2020, which sought to confirm an arbitration award. Respondents' seek to deny confirmation of and vacate the purported arbitration award. The Court grants Respondents' Motion for the following reasons.

**BACKGROUND**

Williams filed his Motion for Confirmation of his purported arbitration award on February 4, 2020. (Dkt. 1). Williams claims to be the fiduciary of the estate of Solomon Flowers and attached IRS Form 56 "Notice Concerning Fiduciary Relationship" as Exhibit A. (Dkt. 1, p. 1, ¶ 1; Dkt. 1 at 3–4). Williams alleges an arbitration award was issued on May 5, 2019 by Non-Public Arbitrator Matthew Zander in Comal County, Texas, and attached the award as Exhibit B. (*Id.* ¶ 2; Dkt. 1 at 6–10). The arbitration award purports to award Williams $500,000 and allows him to recover ten times this amount in punitive damages. (Dkt. 1 at 3). The alleged arbitration

1

agreement involved Williams and Joseph Berrios, on behalf of Cook County. (*Id.* ¶ 2). Williams claims he attached the alleged arbitration agreement as Exhibit C, which are documents concerning a delinquent tax statement for private property associated with the estate of Solomon Flowers and are dated September 16, 2018. (*Id.* 11–20). The Court notes Exhibit C does not contain anything even approaching an arbitration agreement or binding contract to arbitrate in Comal County, Texas and instead appears to be a series of one-sided letters, self-styled as "notices" from Williams addressed to Berrios.

## LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *A.D. v. Credit One Bank*, 885 F.3d 1054, 1060 (7th Cir. 2018) (citations omitted). It requires federal courts to "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms" and encompasses three bedrock principles. *Id.* (citation omitted). "First, the Federal Arbitration Act evinces a 'national policy favoring arbitration.' Second, an arbitration agreement generally cannot bind a non-signatory. Finally, arbitration agreements generally are enforceable against non-signatories only in a handful of limited circumstances, depending on the applicable state law. These limited exceptions are: (1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference." *Id.* at 1060 (citations omitted). Because arbitration agreements are contracts, a "party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (citations omitted).

The Court must first determine whether a valid arbitration agreement exists, which is generally a question for the Court and not an arbitrator. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020) (citing *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416–17 (2019) for the

presumption that judges are authorized "to resolve certain gateway questions, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy"); *see also AT & T Tech., Inc. v. Communication Workers*, 475 U.S. 643, 649–50 (1986). Arbitration agreements are evaluated under the same standards as any other contract and their existence is determined under the principles of state contract law. *See Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997).

## DISCUSSION

### I. The FAA Does Not Apply

A party moving to compel arbitration pursuant to the FAA must demonstrate: (1) the existence of a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate by another party. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Yet, "[i]f there is no contract there is to be no forced arbitration." *Gibson*, 121 F.3d at 1130 (citation omitted).

The parties dispute whether a valid, binding contract exists. When, as here, a case concerns the application of the FAA, the Illinois Supreme Court has "base[d] [its] analysis upon principles of fundamental contract law" to determine the formation of an agreement. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 103, 107 (Ill. 2006). The court "appl[ies] general contract doctrines" because "that approach is more faithful to the [act]." *Id.* at 107–08. Illinois law "requires only a manifestation of mutual assent on the part of two or more persons." *Gupta v. Morgan Stanley Smith Barney*, LLC, 934 F.3d 705, 712 (7th Cir. 2019) (citing *Zabinsky v. Gelber Grp., Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 2004)). The three basic elements of a contract are an offer, an acceptance and consideration. *Gupta*, 934 F.3d at 712 (citing *Melena*, 847 N.E.2d at 109). Illinois

3

courts evaluate contract formation under an objective theory. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (citing Illinois law) (citations omitted); *Vill. of S. Elgin v. Waste Mgmt. of Illinois, Inc.*, 810 N.E.2d 658, 670 (Ill. App. Ct. 2004) ("'Intent' refers to the objective manifestations of intent in the words of the contract and the actions of the parties…").

Petitioner failed to meet his burden of demonstrating the existence of a binding arbitration agreement. The documents he attached are merely one-sided letters from Williams to the County Assessor; there is nothing even vaguely approaching the semblance of an arbitration agreement. Further, in his September 16, 2018, letter, Petitioner requested "evidence of a mutual agreement between the Estate of Solomon Flowers and Cook County" because "our files do not contain any evidence of a mutual agreement." (Dkt. 1 at 12). There is no indication that the County Assessor's office ever agreed to be bound by an arbitration agreement with Williams, and the fact that Williams requested Cook County to supply this evidence suggests its illegitimacy. Under Illinois law, absent a prior course of dealing, silence accompanied by inaction is insufficient to constitute acceptance. *Regan, et. al. v. AT & T Corp.*, 824 N.E.2d 1183, 1188 (Ill. Ct. App. 2005). But there is no evidence of any prior dealing or that Cook County's lack of response to Williams's letters was intended to be an acceptance in any way.

As noted by another court confronted with a similarly nonexistent arbitration agreement, "[t]here has been a recent rash of cases involving [frivolous] arbitration awards." *Teverbaugh v. Lima One Capital, LLC*, 2:19-mc-159-KS-MTP, 2020 WL 448259, at *2 n.1 (S.D. Miss. Jan. 28, 2020) (collecting cases). In *U.S. Bank Nat'l Ass'n v. Nichols*, which also involved a frivolous arbitration agreement, the court found the arbitration award did not identify any specific wrongdoing or basis for the award. No. 19-CV-482-JED-FHM, 2019 WL 4276995, at *3 (N.D. Okla. Sept. 10, 2019). Instead, the arbitrator announced that the petitioner had a prior relationship

4

with the four respondents and formed a contract by making an unspecified counteroffer or "conditional acceptance" to which the respondents somehow "tacitly acquiesce[d]" by failing to respond. *Id.* The *Nichols* court further expounded on the failings of the "arbitrator" by discussing how:

> The purported arbitration award is unlike any other this Court has ever seen. It is devoid of any specific fact-finding. While it references a contract dated December 20, 2018, there is no actual discussion of what its terms are, nor does it recite what the consideration or subject matter of the purported contract was, whom the specific parties to the purported contract were, whether they actually executed any document and, if so, when, and it does not address a method of service or notice, if any, that was given to any of the "Respondent(s).

*Id.* Here, too, the arbitration award is nothing more than a bizarre, conclusory declaration that the Cook County Assessor's office must pay Williams up to $5,000,000. In fact, the arbitrator here did even less than in the *Nichols* court. The arbitrator in this case made almost zero findings, did not even discuss the contract, and utilized principles that defy hornbook contract law. *See Nichols*. 2019 WL 4276995, at *4 (discussing how the purported arbitrator finding a contract was formed by silence defied the basic tenets of contract law). Here, the purported arbitration award considered and concluded that an arbitration agreement existed based on "tacit procuration." (Dkt. 1 at 6, ¶ 4). The purported arbitrator made a finding "based on the pleadings and other materials filed by [Petitioner]" that "all elements of forming an agreement and legally binding commercial contract are satisfied." (*Id.* at 7, ¶¶ 13–14). Yet there were no findings of fact and the arbitration award does not reference any specific contract, which Williams has failed to attach in any event. The Court cannot even ascertain out of what purported conflict this arbitration agreement arose. The award says, "Respondent has submitted and filed a fraudulent claim offending the private and property rights of the Claimant," with no further detail. (*Id.* at 6, ¶ 2).

5

Not to mention, in a December 3, 2020 hearing before the Court, Petitioner was unable to clarify what the arbitration pertained to or even answer basic questions about his case. (Hearing Trans. 19–31). Respondents at this hearing advised that Solomon Flowers was still alive and still owned the property in question. (*Id.* at 24:18–22). Williams admitted Flowers is alive but stated vaguely that they were in a "contractual business agreement." (*Id.* at 27:2–7). The Court asked Williams what the arbitration award was about, since the award is unclear what claim Williams was seeking to enforce. The Court, discussing the attached "arbitration award" (Dkt. 1 at 6–10), stated:

> And it says false claims and fraud. But it does not say what the false claim of fraud is. It says that respondent has submitted and filed a fraudulent claim, offending the private and public property rights of the claimant. And it's all kind of conclusory—declaratory ruling for the respondent to cease and desist all collection efforts associated with the property of the Solomon Flowers' estate—even though Mr. Solomon Flowers is alive—including, but not limited, to property tax owners, return three years of all—so what is your claim that led to you getting what appears to be this odd arbitration award?

(Hearing Trans. 29:6–16). Williams had no response and only stated he was unprepared for oral argument, although these were basic factual questions that even a *pro se* litigant should have been prepared to answer. (*Id.* at 29:17–18). From what the Court can ascertain, the issue was a delinquent property tax issue from a property located in Cook County. That Cook County or the County Assessor would agree to binding arbitration to settle these issues in front of a "non-public arbitrator" in New Braunfels, Texas seems highly unlikely.

The Court declines to confirm William's arbitration award because the evidence fails to establish the existence of any contract between the parties or valid arbitration agreement. There is no evidence the unsolicited letters sent by Petitioner germinated into an actual agreement.

## II. Petitioner has not Complied with Section 13

The Court also declines to confirm Williams's arbitration award because he has failed to comply with § 13 of the FAA, which states, in relevant part:

> The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:
>
> (a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.
> (b) The award.
> (c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

9 U.S.C. § 13. Williams has failed to comply with § 13 as he has not attached any underlying arbitration agreement with the County Assessor. Under the FAA, a court may confirm an arbitration award: "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration...." 9 U.S.C. § 9. To obtain confirmation, § 13 requires that the moving party file the agreement, the award, and each notice, affidavit, or other paper used to confirm, modify or correct the award. *Teverbaugh*, 2020 WL 448259, at *2. "This allows the Court to determine whether a valid arbitration agreement and award exist upon which it can base its judgment." *Id.* (citing *Meekins v. Lakeview Loan Servicing, LLC*, No. 3:19-cv-501, 2019 WL 7340300, at *2 (E.D. Va. Dec. 30, 2019)); *United Cmty. Bank v. Arruarana*, 2011 WL 2748722, at *2 (W.D.N.C. Jul. 12, 2012) ("Without the filings required by § 13, the Court is unable to conclude from the record that a valid arbitration agreement and award exist and therefore is unable to determine whether the Petitioner is entitled to judgment as a matter of law.").

Williams has filed nothing that could feasibly support his contention that he had a binding arbitration agreement or a valid arbitration award pursuant to this agreement. The Court therefore declines to confirm Williams's award.

**III.     The Court will Vacate the Award Pursuant to the FAA**

The FAA § 10 provides that a district court may vacate an arbitration award in the following occasions: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator(s); (3) the arbitrators were guilty of certain kinds of procedural misconduct; and (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award" was not made. 9 U.S.C. § 10(a). However, the Court notes that "[j]udicial review of an arbitration ... award is extremely limited," *Yasuda Fire & Marine Ins. Co. of Eur., Ltd. v. Cont'l Cas. Co.*, 37 F.3d 345, 349 (7th Cir. 1994), and parties may not make "[t]hinly veiled attempts to obtain appellate review of an arbitrator's decision." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 86 F.3d 96, 100 (7th Cir. 1996) (citations omitted). Additionally, the Court undertakes its review of the award with an understanding of the strong "national policy favoring" arbitration. *Hall Street Assocs. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008).

The Court vacates the award under the "fraud, corruption, or undue means" provision of § 10(a) of the FAA. Petitioner obtained an arbitration "hearing" by sending Respondents a series of unintelligible letters, self-styled as an arbitration agreement, that purportedly gave notice of an intent to arbitrate an undescribed taxation issue and used their non-response to initiate an arbitration. The award itself does not have any grounding in fact or law as it contains no specific factual findings or coherent legal conclusions. *See Meekins*, 2019 WL 7340300, at *4 (vacating arbitration award where irregularities in arbitration award process found). Nor did the arbitrator

discuss the specific terms of the contract, even basic elements such as when the contract was signed, or attach a copy of the contract to the award. The arbitrator did not even discuss how the purported breach of the contract occurred. The Court "has little trouble in determining that the award has no legal validity and could only have been the product of undue means." *Id*. Therefore, the Court will vacate the award pursuant to 9 U.S.C. § 10(a).

### IV. Sanctions

Under Rule 11(c), sanctions may be imposed on a party for "making arguments or filing claims that are frivolous, legally unreasonable, without foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (defining "frivolous argument or claim" as "one that is baseless and made without a reasonable and competent inquiry."). The rule "is principally designed to prevent baseless filings." *Royce*, 950 F.3d at 957 (citing *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002)). Rule 11 sanctions are to be imposed sparingly. *Hartmax Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).

Respondents attached documents indicating this is likely not Petitioner's first foray into filing fraudulent cases seeking large settlements from arbitration agreements.[12] In fact, he was already sanctioned approximately $15,000 for a similar scheme in California. *Williams v. Laimana*, SA CV 20-01110-DOC-ADS, 2020 WL 8262400, *2–*3 (C.D. Cal. Dec. 22, 2020). The court there cited to Petitioner's habit of abusing the legal system as grounds for imposing

---

[1] Nor is it Petitioner's first foray into frivolous lawsuits. S*ee Williams v. Court of Cal. for County of Alameda*, Case No. C 14–04231 WHA, 2014 WL 7148943, *1 (N.D. Cal., Dec. 12, 2014) (dismissing Petitioner's federal court action seeking to enjoin state criminal prosecution for forgery in connection with deed-of-trust assignment)
[2] The other two cases are attached at Dkts. 27-1, 27-2, *Williams v. Laimana*, SA CV 20-01110-DOC-ADS, (C.D. Cal.) which is a case involving the same arbitrator and similar "arbitration award" wherein Petitioner was eventually sanctioned; and Dkt. 27-3, which include documents from the case *Safetree Consulting, Damon Charles Williams v. Matthew Patrick Adams, et al.*, Case No. 1:20-mc-00025-KWR (D.N.M.), which was filed September 10, 2020 and appears to involve similarly fraudulent documents and the same arbitrator.

sanctions. The fact that Petitioner was sanctioned and then attempted to try his hand again in a different jurisdiction is deeply troubling.

Petitioner was evasive and defensive when the Court asked him basic questions at his status hearing. In short, he was untrustworthy. Yet it is the "arbitration agreement" and "arbitration award" that the Court finds the most troubling, when there is simply no semblance of legitimacy to either of them. It appears other courts have been confronting this issue of fraudulent arbitration awards that are predicated on silence as a means of assent to an "agreement" with increasing frequency. *Teverbaugh*, 2020 WL 448259, at *2 n.1 (collecting cases). The Court refuses to take part in this charade. *See* Fed.R.Civ.P. 11(c)(1) (indicating that sanctions for violations of Rule 11 may be initiated upon motion by a party or on the court's own initiative); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (indicating that courts may act *sua sponte* in imposing sanctions). Williams is ordered to either submit a legitimate arbitration agreement that he formed with the Cook County Assessor to resolve this tax dispute or to show cause as to why sanctions should not issue within 21 days of the entry of this order. Upon receipt of Petitioner's filing, the Court will determine whether he should be sanctioned, whether he should be referred to the Executive Committee of this Court to prevent him from filing fraudulent lawsuits in the future, and whether the Court should refer the matter to the United States Attorney for review of whether he should be investigated for obstruction of justice.

**CONCLUSION**

Respondents' Motion to Deny Confirmation and Vacate the Arbitration Award [Dkt. 26] is granted. Petition is ordered to show cause as to why sanctions should not issue within 21 days of the filing of this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: March 5, 2021